**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:

                                  Chapter 11, Subchapter V
TIMOTHY ERIK SCHULTZ           Case No. 21-42426-mlo

                                    Hon. Maria L. Oxholm

                Debtor.
_____/

## THIRD AMENDED PLAN OF REORGANIZATION

Timothy Erik Schultz (the "Debtor") proposes this plan of reorganization (the "Plan") through his undersigned counsel. This proposed plan of reorganization is subject to bankruptcy court approval and is for the resolution of outstanding claims against and interests in the Debtor pursuant to Chapter 11 of Title 11 of the United States Code (the "Code").

### A. Description and History of the Debtor's Business

The Debtor is an individual that operates two businesses that are separately formed Michigan limited liability companies – Downriver Staffing Group, LLC, Navicorp, LLC d/b/a Prostaff USA. The Debtor has operated each of these businesses since 2014. Prostaff USA is a manufacturing staffing agency and Navicorp is a transportation business that transports vehicles from OEM storage lots to dealerships and railyards. Both businesses operate in the Metro Detroit region and Debtor's income to fund the plan will be derived from his operation of these companies.

The Debtor has three non-operating businesses, Procorp, LLC which was founded soon after Navicorp and ceased doing business in 2018, T & J Heavy Equipment which ceased operations in 2020 and Navicom which was never operated by the Debtor. The Debtor experienced financial issues as a result of the financial issues experienced by Procorp, LLC. Procorp, LLC's largest customer defaulted on a significant invoice to the Debtor and filed for bankruptcy. This resulted in Procorp's inability to service its debts, in particular to August Funding, LLC, the largest creditor in this bankruptcy, who obtained a judgment on Debtor's personal guaranty to the company. Procorp's was also unable to promptly pay its contractors causing some to file a complaint with the Department of Labor, Procorp ultimately satisfied all amounts due to its contractors however the Department of Labor initiated a wage and hour lawsuit against the Debtor and Procorp alleging contractors of Procorp were actually employees. The Debtor is actively defending DOL's lawsuit and has raised several defenses at law that demonstrate the contractors of Procorp do not meet the definition of employee as a matter of law.

The Debtor is the primary breadwinner of the family. His spouse has income of an approximate average of $3,500 per month which will be contributed toward one of the Debtor's car payments and other household bills to free up Debtor's income to make distributions proposed under this Plan.

## B. Liquidation Analysis.

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **<u>Exhibit A</u>**. In a liquidation, Debtor estimates a total of approximately $124,251.83 would be available to general unsecured creditors after deductions for liquidation costs, trustee fees and costs and priority tax claims of the Michigan Treasury and the IRS. This estimated distribution does not take into account the Department of Labor's alleged priority claim of of $252,000. The Department of Labor's claim remains contingent, unliquidated and disputed and is subject to federal district court litigation in the Eastern District of Michigan which is expected to continue for at least another 12 to 36 months. The Debtor is offering $203,000 to general unsecured, an escrow fund of $126,000 will be set aside as a contingent distribution toward either the undisputed general unsecured creditors or toward payment of the Department of Labor's claim should it prevail in the district court litigation.

## C. Ability to make future plan payments and operate without further reorganization.

The Debtor has provided projected personal financial information as **<u>Exhibit B</u>**. The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $150,000 to be disbursed to general unsecured creditors after disbursements for priority claims, just more than double the sale proceeds debtor

expects would be available to general unsecured creditors in a forced liquidation. The final Plan payment is expected to be paid on or about August 1, 2026.

## ARTICLE 1 SUMMARY OF CLAIMS AND CLASSES

**This Plan provides for the following classes and claims:**

Class 1 Estimated Administrative Expense claims pursuant to 11 U.S.C. §507:

| | |
|---|---|
| Subchapter V Trustee fees: | $10,000 |
| Debtor's Chapter 11 counsel fees + expenses: | $40,000 |
| Less Retainer Deposit: | $1,291 |
| Estimated Admin Expenses Due from Debtor: | $48,709 |

Class 2: Internal Revenue Service, Priority Personal Income Tax Claim

Class 3: Michigan Treasury, Priority Personal Income Tax Claim

Class 4: Wayne County Treasurer

Class 5: Secured Claim of First Commonwealth Bank

Class 6: Secured Claim of Ally Bank

Class 7: Secured Claim of Ally Bank

Class 8: Contingent Guaranty Claim of Kubota Credit Corporation

Class 9: Allowed General Unsecured Claims

Class 10: Priority Department of Labor Claim

## ARTICLE 2 TREATMENT OF CLASSES OF CLAIMS

### Class 1 Administrative Expense claims pursuant to 11 U.S.C. §507

This class is Impaired.

|  |  |
|---|---|
| Subchapter V Trustee fees of approximately | $10,000 |
| Debtor's Chapter 11 & Special counsel of approximately | $40,000 |

The Debtor will pay these claims 100% in full without interest over 48 months commencing 30 days after entry of court's orders approving payment of such fees. Administrative expenses are estimated based on the Debtor's legal fees of bankruptcy counsel and special counsel through the Debtor's confirmation hearing and post confirmation pre-case closing services.

This proposed distribution is subject to increase if the Debtor incurs additional administrative expenses including but not limited to expert witness expenses, additional attorney fees to promote confirmation of a contested plan and additional Subchapter V Trustee fees necessary to promote confirmation of this plan and/or to mediate plan confirmation by consent. Any increase in administrative expenses will be paid from the amounts the Debtor estimates for disbursement to Class 9 general unsecured creditors.

### Class 2: Internal Revenue Service, Priority Personal Income Tax Claim

Amount of Priority Claim: $69,908.17

This class is impaired.

Debtor will pay the IRS priority claim 100 percent in full within the first plan year together with interest at 4.5 percent. Payments will be made in 60 equal monthly installments and will commence 30 days after the Effective Date.

**Class 3: Michigan Treasury, Priority Personal Income Tax Claim**

Amount of Priority Claim: $6,780

This class is impaired.

Debtor will pay the Michigan Treasury claim 100 percent in full within the first plan year together with interest at 4.5 percent. Payments will be made in 60 equal monthly installments and will commence 30 days after the Effective Date.

**Class 4: Wayne County Treasurer 2021 Taxes**

Amount of Claim: $2,549.46

This class is unimpaired. The Debtor will pay Class 4 100 percent in full together with any additional accrued statutory interest 30 days after the Effective Date.

**Class 5: Secured Claim of First Commonwealth Bank**

**Collateral:** 2016 Porsche
**Impaired**
**Claim Amount:** $112,447.72
**Value:** $116,000

The Debtor will pay Class 5 regular payments under the contract terms of the note except the Debtor will make the first post-confirmation payment 30 days after the Effective Date.

**Class 6: Secured Claim of Ally Bank**
    **Collateral**: F150 Creditor
    **Impaired**
    **Claim Amount:** $44,333.71
    **Value:** $51,456

The Debtor will pay Class 6 regular payments under the contract terms of the note except the Debtor will make the first post-confirmation payment 30 days after the Effective Date.

**Class 7: Secured Claim of Ally Bank**

    **Collateral:** 2021 GMC Yukon
    **Impaired**
    **Claim Amount:** $82,613.83
    **Value:** $50,000

The Debtor will pay Class 7 regular payments under the contract terms of the note except the Debtor will make the first post-confirmation payment 30 days after the Effective Date.

**Class 8: Contingent Personal Guaranty for Kubota Corporation**

Estimated Claim: $19,435.43

Unimpaired.

The Debtor is a personal guarantor of this debt which is the primary liability of Debtor's company T&J Excavating. The business is servicing the debt and the debt will be paid in full through regular installment payments or through the company's liquidation of the subject excavator.

## Class 9: Allowed General Unsecured Claims

Estimated Allowed Claims Total: $5,973,058.20

This class is impaired.

Debtor will make quarterly disbursements to Class 9 Creditors in an amount approximately equivalent to $57,000 USD. Payments will commence in year four of the plan where in debtor will make a pro rata disbursement of $5000 in two semiannual payments due on August 15, 2025 and October 15, 202. In year five, Debtor will make a pro rata disbursement of $52,793 USD in two semiannual payments due on April 15, 2026 and September 15, 2026. This distribution is subject to reduction equal to any increase in administrative expenses that exceed the Debtor's estimated administrative expense claims set out in Class 1.

## Class 10: Resolved Priority Claim of Department of Labor

Priority Claim Total: $252,416.36

This class is impaired.

Debtor will make monthly installments commencing on the 15th of the month (or another day of the month that is mutually agreed upon by the Debtor and this creditor) that is the 60th day after the court's order confirming this plan. Debtor will pay this claim in full together with interest at 3.25 percent in equal monthly installments on the 15th of each month (or another day of the month that is mutually agreed upon by the Debtor and this creditor). The equal monthly payments will be in the amount of $4,563.67.

## ARTICLE 3 ALLOWANCE AND DISALLOWANCE OF CLAIMS

a. **Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed by a final nonappealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

b. **Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order

c. **Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 4 EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

Blazer Lease

Agreement with Procorp re vans

The Debtor has no leases that have been rejected.

## ARTICLE 5 DISCHARGE

On the confirmation date of this Plan if deemed consensual confirmation, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any

debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (a) imposed by this Plan; (b) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Federal Rule of Bankruptcy Procedure 4007(c) of the; or (c) of a kind specified in § 1141(d)(6)(B).

In the event that this Plan is confirmed as a non-consensual plan, Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code upon payment in full of the sums required under this Plan and application to the Court.

## ARTICLE 6 PLAN PROPOSED IN GOOD FAITH

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

## ARTICLE 7 RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of

the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

## ARTICLE 8 LIQUIDATION ANALYSIS

The Debtor's Liquidation Analysis is attached as **<u>Exhibit A</u>**. The Debtor believes unsecured creditors would be paid at most $110,000 based on cost of sale upon liquidation and Chapter 7 administrative expense claims. The Debtor proposes payment of $142,671 a $100,000 improvement over what Debtor estimates recovery on in a Chapter 7.

**<u>Risks, conditions and assumption in Liquidation Analysis.</u>** All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to the Debtor. The estimates have not been subject to audit or appraisal. The estimates shall in no way be construed to constitute binding guaranties, representations or warranties and are subject to revision at any time. Except as otherwise noted herein or in the Plan, the values for the Debtor's assets, as set forth in the Bankruptcy Schedules filed in connection with the Bankruptcy Petition, reflect the Debtor's best estimate of the market value of its assets, except where noted to

the contrary. In establishing the values, Debtor has considered the size, age, physical condition and location of the assets.

## ARTICLE 9 PLAN IMPLEMENTATION

a. **Plan projections**. The Debtor has attached as **Exhibit B**, its summary of post-confirmation financial projections for the life of the Plan.

b. **Voting and Acceptance of the Plan.**

b.1. Debtor will only count ballots timely returned by impaired creditors.

b.2. If Debtor receives votes in an impaired creditor class, the plan shall be deemed accepted and confirmed by consent of the creditors if the ballots received in favor of the plan comprise a simple majority and two-thirds in dollar amount.

b.3. If no ballots are received or if an insufficient number of creditors vote in favor of the plan the Debtor may confirm the plan as a nonconsensual plan and after Substantial Consummation of the Plan, the Debtor shall make all disbursements due under the plan.

c. **Exemption from Certain Transfer Taxes and Recording Fees.** To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfer from a Debtor to any entity under, pursuant to, in contemplation of, or in connection with the Plan or through: (a) the issuance, distribution, transfer or exchange of any debt, securities or other interest in the Debtor; (b) the creation, modification, consolidation or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease

or sublease; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

d. **No Further Approvals.** The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor.

e. **Confirmation**

e.1. If the Plan is confirmed under section 119l(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Bankruptcy Code section 1183 through Substantial Consummation of the Plan at which point its services shall terminate.

e.2. If the Plan is confirmed under section 1191(b), the Subchapter V Trustee shall not be terminated until the Trustee has performed such duties as are described in sections 1183 and 1194(b) and such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.

f. **<u>Pre-Effective Date Injunctions <u>or</u> Stays.</u>** All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Subchapter V Case pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

g. **<u>Avoidance Actions.</u>** Unless otherwise set forth in this Plan, on the Confirmation Date, the right to pursue any and all Avoidance Actions shall transfer to the Reorganized Debtor.

h. **<u>Professional Fee Claims.</u>** All services performed or expenses incurred by any Professional on behalf of the Debtor or the Reorganized Debtor with respect to this Subchapter V Case after the Effective Date, shall be Administrative Claims and shall not be subject to the prior review and approval of the Bankruptcy Court. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Effective Date, no Professional shall be required to disclose payments from the Debtor or the Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of the Debtor and the Reorganized Debtor arising after the

Effective Date shall be billed directly to the Reorganized Debtor and the Bankruptcy Court shall only review that portion to which the Reorganized Debtor objects. The Reorganized Debtor shall pay the portion not objected to in accordance with the terms of the invoices.

i. **<u>Change of Address.</u>** In order to ensure that it receives its distribution, each Creditor holding an Allowed Claim must advise the Reorganized Debtor or Subchapter V Trustee, as applicable, of any change in address. Absent any such notification, the Reorganized Debtor or Subchapter V Trustee, as applicable, shall send payments to the address listed on the Matrix on file with the Bankruptcy Court. If the payment is not negotiated within three (3) months after being mailed, it shall be void and the Reorganized Debtor shall have no further obligation to such Creditor.

j. **Vesting of Property.** Title to all property of the Debtor shall vest in the Reorganized Debtor upon the Effective Date of the Plan. The Debtor shall be discharged from its status as Debtor and the affairs and business of the Reorganized Debtor shall thereafter be conducted without Court involvement except as may be governed by the Plan. In the event this case is converted to a Chapter 7, all property of the Debtor and reorganized debtor will revest in the estate.

k. **Monthly Reports.** The Debtor will remain responsible for filing timely Monthly Operating Reports until this case is confirmed, dismissed or converted to Chapter 7.

l. **Compromise of Litigation.** The Reorganized Debtor shall have the right to commence, continue, amend or compromise all causes of action (including without limitation any Avoidance Action) available to the Debtor, the Estate, the Debtor-in- Possession, or the Reorganized Debtor, whether or not those causes of action were the subject of a lawsuit as of the Confirmation Date.

## ARTICLE 10 MISCELLANEOUS PROVISIONS

a. **Definitions and Rules of Construction.** The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

b. **Effective Date of Plan.** The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of

confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

c. **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

d. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

e. **Appendices.** The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

f. **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

g. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Michgan govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

h. **Corporate Governance.** Not applicable where this is an individual debtor.

i. **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 will apply.

j. **Confirmation Order Controls.** In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

k. **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

l. **Incorporation of Exhibits.** All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. All Exhibits may be revised prior to the Effective Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan. The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

m. **Modifications to the Plan.** The Debtor may amend or modify the Plan and any schedule or supplement hereto, at any time prior to the Effective Date in accordance with the Bankruptcy Code, Bankruptcy Rules or any

applicable court order. The Debtor expressly reserves its rights to alter, amend or modify materially the Plan, one or more times, after Confirmation, as provided by section 1193 of the Bankruptcy Code, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

n. **Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan or in this Subchapter V Case, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

o. **Notice.** All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and

telephonically confirmed

p. **<u>Reservation of Rights.</u>** The filing of the Plan, any statement or provision contained in the Plan, or the talcing of any action by the Debtor with respect to the Plan, shall not be deemed to be an admission or waiver of any rights of the Debtor with respect to any Holders of Claims against or Equity Interests in the Debtor.

q. **<u>No Waiver.</u>** Neither the failure of a Debtor to list a Claim or Equity Interest in the Debtor's Schedules, the failure of a Debtor to object to any Claim, Administrative Claim or Equity Interest for purposes of voting, the failure of a Debtor to object to a Claim, Administrative Claim or Equity Interest prior to the Confirmation Date or the Effective Date, nor the failure of a Debtor to assert a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the absence of a legally-effective express waiver or release executed by the Debtor with the approval of the Bankruptcy Court, if required, and with any other consents or approvals required under the Plan, be deemed a waiver or release of the right of a Debtor or its respective successors, either before or after solicitation of votes on the Plan, the Confirmation Date or the Effective Date, to (a) object to or examine such Claim, Administrative Claim or Equity Interest, in whole or in part, or (b) retain or either assign or exclusively assert, pursue, prosecute, utilize, or otherwise act or enforce any Retained Cause of Action against the Holder of such Claim, Administrative Claim or Equity

Interest.

r. **Release of Liens.** The Debtor, Reorganized Debtor, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by the Debtor or Reorganized Debtor of UCC financing statements and the execution by Creditors of any UCC or mortgages, releases or terminations.

s. **Setoffs and Counterclaims.** No Creditor (including without limitation a Person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to set off a Claim against an obligation to the Debtor or Reorganized Debtor arising in connection with a different contract. Unless expressly asserted in this Subchapter V Case through the filing of a Proof of Claim, all setoffs and counterclaims are waived pursuant to this Plan. The terms of this paragraph 11.12 shall not apply to any taxing authority,

t. **Successors and Assigns.** This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

u. **Default.** In the event of Debtor's monetary default on the terms of the Plan any creditor or party in interest may seek to reopen this Chapter 11 case to seek conversion or dismissal of the case.

WHEREFORE the Debtor prays for entry of an order confirming this plan.


Dated: October 22, 2021          /s/Timothy Erik Schultz
                                 Timothy Erik Schultz


                                 Respectfully submitted,

                                 MAXWELL DUNN, PLC

Dated: October 22, 2021          /s/ Kimberly Ross Clayson
                                 Kimberly Ross Clayson (P69804)
                                 Attorneys for the Debtor
                                 24725 W. 12 Mile Road, Suite 306
                                 Southfield, MI 48034
                                 (248)-246-1166
                                 bankruptcy@maxwelldunnlaw.com

# EXHIBIT A

## LIQUIDATION ANALYSIS

### A. Introduction

· Under the "best interests of creditors" test set· forth in section l 129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest, who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the "best interests of creditors" test, the Debtor has prepared the following hypothetical Liquidation Analysis. The Liquidation Analysis estimates potential Cash distributions to Holders of Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of the Debtor's assets. Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan and Disclosure Statement.

### B. Scope, Intent, and Purpose of the Liquidation Analysis

The determination of the costs of and hypothetical proceeds from the liquidation of the Debtor's assets is an uncertain process involving the

extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor, and his advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtor were to be liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants.

**NEITHER THE DEBTOR NOR HIS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTAL RESULTS COULD VARY MATERIALLY.**

## C. Notes Applicable to the Liquidation Analysis

### 1. Appointment of a Chapter 7 Trustee

Pursuant to II U.S.C. §1129(a)(7)(A)(ii), the liquidation value, for purposes of the "best interest of creditors" assessment, is to be made as of the effective date of the plan. Because this date is unknown at this time, the Debtor has utilized historical financial information, up to the time of the filing of the Chapter 11 Plan of Reorganization. The Debtor expects that at the time of the effective date of its Plan, financial circumstances regarding its asset and liability base will not have significantly changed.

### 2. Liquidation Value

For the Debtor's interest in personal property, the liquidation values take into account the presumed costs of sale, including sales broker fees of 6 percent for real estate if applicable. Net forced sale value is the estimated net recovery amount anticipated less sale expenses such as auctioneer fees and sale costs or 40 percent of present market value. Deductions are made following the liquidation chart for Chapter 7 Trustee statutory fees, and an estimate for the fees of the Trustee's professionals. The Debtor did not take into account the value of potential avoidance actions, as the Debtor does not anticipate pursuing any potential avoidance actions. The Debtor does not anticipate pursuing any potential avoidance actions due to the fact that the Debtor believes the

defendants would have ordinary course and new value defenses. The Debtor's plan projections and liquidation analysis demonstrate the Debtor's ability to pay unsecured creditors in full over the term of the plan, making the pursuit of avoidance actions unnecessary.

3. Chapter 7 Trustee Fee

It is assumed that a Trustee will receive the sum of the proceeds as set forth under the liquidation value. The limitations on the Chapter 7 trustee's fees are contained in 11 U.S.C. §326. For purposes of the Liquidation Analysis, the chapter 7 trustee's fees are calculated using the limitations of Section 326 of the Bankruptcy Code and are based upon equity in the property.

## SUMMARY LIQUIDATION ANALYSIS

| Property Description | Exemptions | Liens | Estimated Value | Forced Liquidation Value (After Liquidation Expenses) |
|---|---|---|---|---|
| 22053 Kensington Taylor, MI | 100% Entireties | $0 | $180,000 | $0 |
| Vendor's Interest in Land Contract 18031 State Hwy M-28 Newberry, MI 49868 | $0 | $0 | $287,000 | $200,000 |
| Cash on Hand | $0 | $0 | $9,000 | $9,000 |
| 2021 Ford F150 | $0 | $44,000 | $51,456 | $0 |
| 2021 GMC Yukon | $0 | $82,293 | $50,000 | $0 |

| | | | |
|---|---|---|---|
| 2006 Jeep Wrangler | $0 | $0 | $7,000 | $2,800 |
| 1966 Chevrolet Chavelle | $0 | $0 | $10,000 | $4,000 |
| Porsche | $0 | $112,442.72 | $116,000 | $0 |
| Arctic Cat | $0 | $0 | $6,000 | $2,400 |
| Arctic Cat | $0 | $0 | $7,000 | $2,800 |
| Renegade Snowmobile Trailer | $0 | $0 | $4,000 | $1,600 |
| Kawasaki Snowmobile | $0 | $0 | $2,000 | $800.00 |
| Honda Pioneer Side by Side | $0 | $0 | $10,000 | $4,000 |
| Household Goods | $5,000 | $0 | $5,000 | $0 |
| Watches | $0 | $0 | $10,000 | $4,000 |
| Clothing | $500 | $0 | $500 | $0 |
| Transit Vans | $0 | $0 | $20,000 | $8,000 |
| Navicorp | $0 | $0 | $300 | $0 |
| Downriver | $0 | $0 | ($40,297.37) | $0 |
| T&J Heavy Equipment | $0 | $0 | $0 | $0 |
| Procorp | $0 | $0 | $0 | $0 |

| Navicom | $0 | $0 | $0 | $0 |
| --- | --- | --- | --- | --- |

NET RECOVERY to CHAPTER 7 ESTATE:  $239,400

LESS CH 7 TRUSTEE ATTORNEY FEES:  $ 25,000

LESS CH 7 TRUSTEE FEE:  $ 15,470

NET CASH TO CREDITORS:  $198,930

LESS PRIORITY CLAIMS:  $327,094.53
*IRS, MI Treasury, Dept. of Labor

NET BEFORE UNSECURED CREDITORS  ($128,164.53)

NET TO GENERAL UNSECURED CREDITORS: $0

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | TOTAL |
|---|---|---|---|---|---|---|
| Salary | $156,000.00 | $162,240.00 | $168,729.60 | $175,478.78 | $182,497.94 | $844,946.32 |
| Taxes FICA | $54,600.00 | $56,784.00 | $59,055.36 | $61,417.57 | $63,874.28 | $295,731.21 |
| Net | $101,400.00 | $105,456.00 | $109,674.24 | $114,061.21 | $118,623.66 | $549,215.11 |
| Company Distributions | $20,000.00 | $20,800.00 | $21,632.00 | $22,497.28 | $23,397.17 | $108,326.45 |
| Land Contract | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $180,000.00 |
| TOTAL NET | $157,400.00 | $162,256.00 | $167,306.24 | $172,558.49 | $178,020.83 | $837,541.56 |

| Rent |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| Mortgage | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4.a Property Taxes* | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6a. Electricity, heat, natural gas | $3,200.00 | $3,328.00 | $3,461.12 | $3,599.56 | $3,743.55 | $17,332.23 |
| 6b. Water, sewer, garbage collection | $360.00 | $374.40 | $389.38 | $404.95 | $421.15 | $1,949.88 |
| 6c. Telephone, cell phone, Internet, satellite, and cable ser | $3,000.00 | $3,120.00 | $3,244.80 | $3,374.59 | $3,509.58 | $16,248.97 |
| 6d. Other. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7. Food and housekeeping supplies | $6,000.00 | $6,240.00 | $6,489.60 | $6,749.18 | $7,019.15 | $32,497.94 |
| 8. Childcare and children's education costs | $500.00 | $520.00 | $540.80 | $562.43 | $584.93 | $2,708.16 |
| 9. Clothing, laundry, and dry cleaning | $1,080.00 | $1,123.20 | $1,168.13 | $1,214.85 | $1,263.45 | $5,849.63 |
| 10. Personal care products and services | $480.00 | $499.20 | $519.17 | $539.93 | $561.53 | $2,599.83 |
| 11. Medical and dental expenses | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12. Transportation. | $3,000.00 | $3,120.00 | $3,244.80 | $3,374.59 | $3,509.58 | $16,248.97 |
| 13. Entertainment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 14. Charitable contributions | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 15. Insurance. |  |  |  |  |  |  |
| 15a. Life insurance 15a. | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |
| 15b. Health insurance | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |
| 15c. Vehicle insurance 15c. | $10,000.000 | $10,400.000 | $10,816.000 | $11,248.640 | $11,698.586 | $54,163.226 |
| 15d. Other insurance. Specify: | $0.000 |  |  |  |  | $0.000 |
| 16. Taxes. (On Company Distributions) | $3,000.000 | $3,120.000 | $3,244.800 | $3,374.592 | $3,509.576 | $16,248.968 |
| 17. Installment or lease payments: | See Classes 5 - 7 |  |  |  |  | $0.000 |
| 18. Your payments of alimony, maintenance, and support | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |
| 19. Other family support payments | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |
| Total Expenses | $30,620.000 | $31,844.800 | $33,118.592 | $34,443.336 | $35,821.069 | $165,847.797 |

| Net Income | $126,780.00 | $130,411.20 | $134,187.65 | $138,115.15 | $142,199.76 | $671,693.76 |
|---|---|---|---|---|---|---|

| Class 1 Admin Expenses* | $8,381.00 | $12,012.20 | $15,787.05 | $14,715.23 | $0.00 | $50,895.48 |
|---|---|---|---|---|---|---|
| Class 2 IRS | $15,834.00 | $15,834.00 | $15,834.00 | $15,834.00 | $15,834.00 | $79,170.00 |
| Class 3 Michigan Treas | $1,668.00 | $1,668.00 | $1,668.00 | $1,668.00 | $1,668.00 | $8,340.00 |
| Class 4 WCT - See 4a | $2,549.00 | N/A | N/A | N/A | N/A | $2,549.00 |
| Class 5 - First Commonwealth Bank | $27,232.92 | $27,232.92 | $27,232.92 | $27,232.92 | $4,538.82 | $113,470.50 |
| Class 6 - Ally Bank * | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Class 7 - Ally Bank | $18,901.68 | $18,901.68 | $18,901.68 | $18,901.68 | $12,601.12 | $88,207.84 |
| Class 8 - Kubota Guaranty See Plan Treatment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Class 9 Undisputed GUCs | $0.00 | $0.00 | $0.00 | $5,000.00 | $52,793.94 | $57,793.94 |
| Class 10 Disputed DOL Claim | $54,764.00 | $54,764.00 | $54,764.00 | $54,764.00 | $54,764.00 | $273,820.00 |

Exhibit B

* Paid by spouse est. monthly income of $3,500